UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN BROWN | CIVIL ACTION |
| VERSUS | No. 08-852 |
| PERFORMANCE ENERGY SERVICES, LLC et al. | SECTION I/2 |

## ORDER AND REASONS

Before the Court are two summary judgment motions. The first is a motion for partial summary judgment,[1] filed on behalf of defendants, Performance Energy Services, LLC ("Performance") and Elevating Boats, LLC ("EBI").[2] The second is a motion for summary judgment, filed on behalf of defendant Signal Mutual Indemnity Association, Ltd. ("Signal").[3] Plaintiff, Jonathan Brown ("Brown"), has opposed the motion.[4] For the following reasons, the motion filed by Performance and EBI is **GRANTED IN PART** and **DENIED IN PART**, and the motion filed by Signal is **GRANTED**.

---

[1] R. Doc. No. 59.

[2] Elevating Boats, LLC was formerly known as Elevating Boats, Inc. Therefore, the Court, as do the parties, refers to Elevating Boats, LLC as EBI.

[3] R. Doc. No. 56.

[4] R. Doc. No. 65.

1

## BACKGROUND

Brown alleges that he was employed by Performance and assigned to work aboard the vessel M/V JIMMIE HOLMES ("JIMMIE HOLMES"), allegedly owned by EBI.[5] He alleges that, on or about December 17, 2007, the JIMMIE HOLMES "was next to a platform possibly owned by Bois d'Arc Energy."[6] Brown further alleges that, on that date while aboard the JIMMIE HOLMES, he slipped, tripped, or fell on a hose or unknown substance on a stairway leading to the work deck of the vessel.[7] As a result of his injury, he allegedly sustained serious, permanent, and disabling injuries.[8]

On February 6, 2008, Brown filed a "petition for damages" in this Court, naming as defendants Performance, EBI, and Signal, Performance's alleged insurer. His petition alleged that he was a "seaman and/or member of the crew aboard the [JIMMIE HOLMES]."[9] Brown seeks damages for medical expenses, lost wages, pain and suffering, emotional distress, and loss of enjoyment of life.[10] He seeks further damages for defendants' alleged failure to provide maintenance and cure. He brought his claims against Performance and EBI pursuant to the Jones Act and under the general maritime law. His claim against Signal is brought pursuant to

---

[5] Brown alleges that the JIMMIE HOLMES was "owned and/or operated and/or chartered and/or controlled by defendant EBI." R. Doc. No. 1, pet. ¶4.

[6] Brown amended his petition on August 13, 2008 to substitute Bois d'Arc Energy for Merritt Oil as owner of the platform. See R. Doc. No. 38, am. pet. ¶4.

[7] Pet. ¶5.

[8] Id. ¶6.

[9] Id. ¶4.

[10] Id. ¶9.

Louisiana's direct action statute.[11]

Brown amended his petition on August 13, 2008. He stated that should he be denied seaman status, as an alternative to the Jones Act, he seeks damages against EBI as a longshoreman pursuant to section 905(b) of the Longshore Harbor Workers' Compensation Act ("LHWCA") and the general maritime law.[12]

Performance and EBI filed their motion for partial summary judgment on October 8, 2008. In their motion, defendants seek dismissal of Brown's Jones Act claims, a declaration that Brown's remedy against Performance is limited to LHWCA benefits, and a declaration that Louisiana law, rather than federal maritime law, applies to Brown's negligence claims.

Signal filed its motion for summary judgment on October 7, 2008. Signal seeks

---

[11] Id. ¶13. Louisiana's direct action statute, permitting an injured person to file a lawsuit directly against an insurer, is codified at La. Rev. Stat. § 22:1269.

[12] Am. pet. ¶5. Section 905(b) provides as follows:

> (b) Negligence of vessel
> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

In the amended petition, Brown does not state that he seeks damages against either Performance or Signal pursuant to the LHWCA.

dismissal of all claims asserted against it.

*LAW AND ANALYSIS*

I. **Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may

4

not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**II.     Seaman Status**

The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment," 46 U.S.C. App. § 688. Therefore, to recover under the Jones Act, a plaintiff must show he qualifies as a "seaman." The U.S. Supreme Court initially defined the Jones Act's use of the term seaman to require that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 355 (1991) (quoting Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir. 1959)).[13]

The Court subsequently imposed the additional requirement that "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). By adding a requirement of substantial connection, the Court intended to distinguish between "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." Id. at 368. The Chandris Court further explained that:

---

[13] The Court clarified that an employee need not "aid in navigation or contribute to the transportation of the vessel" to qualify as a seaman. Wilander, 498 U.S. at 355, 111 S. Ct. at 817.

5

> 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon.' The duration of the worker's connection to a vessel and the nature of the worker's activities taken together determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time.

Id. at 370 (quoting Wallace v. Oceaneering Int'l, 727 F.2d 427, 432 (5th Cir. 1984)).

The Fifth Circuit has stated as a general rule of thumb that in order to qualify as a Jones Act seaman, an employee should demonstrate that at least thirty percent of his work is spent in service of a vessel in navigation. Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 375 (5th Cir. 2001). The Supreme Court approved of this benchmark, but clarified that it is "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, '[t]he inquiry into seaman status is fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.'" Chandris, 515 U.S. at 371 (quoting Wilander, 498 U.S. at 356).

Qualifying as a seaman under the Jones Act hinges on an employee's status in relation to a vessel rather than on the nature or location of the injury. Id. at 359-63. Therefore, "maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship." Id. at 360. Because plaintiff bears the burden of proving his Jones Act claims at trial,[14] Brown must present a genuine issue of material fact

---

[14] Brown appears to misunderstand the summary judgment burden imposed upon him when he states that "Performance and EBI have failed to carry their burden with respect to whether Jonathan was a Jones Act seaman at the time of his injury." Mem. opp'n 6. "Where the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." Whiting v. Univ. of S. Miss., 451 F.3d 339, 344 (5th Cir. 2006) (quoting Celotex, 477 U.S.

with respect to his alleged seaman status in order to withstand summary judgment.

A.      *Contribution to the Vessel's Function*

Brown contends that his duties aboard the JIMMIE HOLMES contributed to the vessel's function or the accomplishment of its mission. He cites his duties aboard the vessel, including: attaching walkways from the vessel to the platform, painting on both the vessel and the platform, preparing coffee for the crew, and cleaning the deck of the vessel.[15] Brown stresses that he received his orders directly from the captain and crew of the vessel.[16]

Defendants argue that Brown's duties did not contribute to the vessel's function because they were primarily performed to assist Performance's work on the Bois d'Arc Energy oil platform. Conceding that some of Brown's work did occur on the vessel deck, defendants argue that the vessel was merely a support structure for Performance's work on the platform.

To support their argument, defendants cite Hufnagel v. Omega Service Industries, Inc., 182 F.3d 340 (5th Cir. 1999). In Hufnagel, the plaintiff was a rigger who had been assigned to repair the pilings of an oil platform. Id. at 344. The platform owner had contracted for "an adjacent jack-up boat" — the AMBERJACK — to provide temporary work space and sleeping quarters for the plaintiff and his fellow workers. The plaintiff's duties "involved platform work, and were not related to the navigation, maintenance, or voyage of the AMBERJACK. [The plaintiff's] sole purpose for being present on the platform or the AMBERJACK related to the

---

at 322-23). The burden, therefore, is upon Brown to establish that he qualifies as a seaman pursuant to the Jones Act.

[15] R. Doc. No. 65-9, ex. 2., Jonathan Brown dep. at 57:3-24; 60:2-18; 64:19-20.

[16] Id. at 65:9-18.

repair of the platform." Id. at 347. Even though the plaintiff performed "minor duties" aboard the vessel in Hufnagel, the Fifth Circuit made clear that performing those duties did not "transform his position as a platform worker into that of a seaman." Id. Further, the plaintiff "had no duties regarding the maintenance, custody, or operation of the vessel. Id. at 345.

The Court finds that the duties of the Hufnagel plaintiff and those of Brown are essentially equivalent. Brown, like the Hufnagel plaintiff, was employed as a rigger. The duties that Brown performed on the JIMMIE HOLMES were equivalent to the "minor duties" of the Hufnagel plaintiff. Id. at 347. The tasks Brown performed for Performance aboard the JIMMIE HOLMES included tying a walkway to the vessel, preparing certain components for installation on the platform,[17] occasionally preparing coffee, and cleaning the vessel's deck solely in the areas in which the platform components had been prepared.[18] That work, and Brown's overall presence on the JIMMIE HOLMES, contributed not to the function of the vessel, but to the mission and function of the platform. See Williams v. Sims Indus., LLC, 2008 WL 5100505, at *3 (W.D. La. Dec. 2, 2008) ("The mere fact that plaintiff used the work area provided on [the vessel] . . . to complete his duties does not transform his work for the platform into that of the ship's work."). The Court concludes that Brown has not met his summary judgment burden with respect to whether his duties contributed to the function of the JIMMIE HOLMES and that he has, therefore, not satisfied the initial, threshold condition of seaman status.

---

[17] Id. at 60:2-23.

[18] Id. at 64:19-23.

B.  *Connection to a Vessel in Navigation*

Even if Brown had satisfied the first prong of the Chandris test, he could not be classified a seaman because he fails the second prong. To satisfy the second requirement of seaman status, Brown must show that he had a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." Chandris, 515 U.S. at 368.

Brown testified in his deposition that he worked a maximum of seven work "hitches" for defendant Performance.[19] Brown allegedly asserted that he "lived on the boat" for at least three of those hitches.[20] Brown submits this evidence to support his assertion that he was "attached to a vessel" at least forty-two percent of the time (i.e., three divided by seven), thereby satisfying the thirty-percent benchmark articulated by the Fifth Circuit in Roberts.

Brown's forty-two percent calculation, however, relies on at least two flawed premises underlying his application of the thirty-percent test. First, he implicitly assumes, without supporting evidence, that the duration of each work hitch was equivalent. Brown then makes the secondary assumption that all of his time spent on the boat was "in the service of a vessel in navigation." Chandris, 515 U.S. at 371; Butcher v. Superior Offshore Int'l, LLC, No. 07-8136, 2008 WL 5110629, at *3 (E.D. La. Dec. 2, 2008) ("Plaintiff ate and slept onboard the [vessel], but plaintiff cannot claim time spent sleeping or eating in this analysis, because this time was not spent 'in the service of a vessel in navigation.'").

Defendants argue that during his employment with Performance, Brown only worked on

---

[19] Jonathan Brown dep. at 54:16-17.

[20] Brown cites pages of his deposition testimony which have not been submitted in connection with his opposition to the motion. R. Doc. No. 65-6, mem. opp'n 7.

the vessel in question, the JIMMIE HOLMES, one time.[21] Brown presents little other evidence or argument to substantiate his seaman status claim.

Based upon the summary judgment evidence presented, the Court concludes that there is no genuine issue of material fact with respect to whether Brown had a substantial connection to a vessel in navigation. Brown has not pointed to evidence in the record that, for summary judgment purposes, establishes this element of seaman status. Accordingly, defendants' motion for summary judgment on Brown's seaman status is **GRANTED** and Brown's Jones Act and maintenance and cure claims against Performance and EBI must be **DISMISSED WITH PREJUDICE**.[22]

### III. Remaining Claims

In their motion, defendants also seek a declaration that Brown's sole remedy against his employer, Performance, is LHWCA benefits.[23] To support their argument, defendants submit a single conclusory sentence: "[B]ecause Jonathan Brown is not entitled to Jones Act remedies, his only potential claims against his employer, Performance, are the exclusive remedies of the Longshore and Harbor Workers' Compensation Act . . . ."[24] Notwithstanding the cursory level of attention devoted to this argument, the Court agrees with defendants.

---

[21] Jonathan Brown dep. at 130:2-13.

[22] Although defendants do not expressly request dismissal of Brown's maintenance and cure claim, it is beyond doubt that only seamen are entitled to the benefits of maintenance and cure. See, e.g., Hall v. Diamond M Co., 732 F.2d 1246, 1248 (5th Cir. 1984).

[23] Mem. supp. 1.

[24] Id. at 9.

A.    *LHWCA Section 905(a)*

"The LHWCA provides that an employer, whether negligent or without fault, has a duty to pay workers' compensation to a covered employee." Moore v. Phillips Petroleum Co., 912 F.2d 789, 789 (5th Cir. 1990); see also 33 U.S.C. § 904. "When the LHWCA applies, workers' compensation is an employee's exclusive remedy against the employer in its capacity as an employer." Moore, 912 F.2d at 789. The exclusivity provision of the LHWCA, § 905(a), provides, in pertinent part: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . ."[25] "Under § 904, a covered worker may receive compensation benefits from his employer without regard to fault, in exchange for which his employer receives full immunity from tort suits under § 905(a)." Slaydon v. Grand Isle Shipyard, Inc., No. 98-2704, 1999 WL 253525, at *3 (E.D. La. Apr. 28, 1999).

Defendants seek a declaration that § 905(a) applies to Brown's claims against Performance, which would require dismissal of his remaining general maritime negligence claim against Performance. There is no dispute that Performance was Brown's employer. Nor is there any allegation that Performance owned the JIMMIE HOLMES. Section 905(a)'s exclusivity provision bars Brown's general maritime claims against Performance. Therefore, Brown's negligence claim under the general maritime law against Performance must be **DISMISSED WITH PREJUDICE**.

---

[25] Section 905(a) provides an exception to the exclusivity of its remedy "if an employer fails to secure payment of compensation as required by [the LHWCA]." Brown's petition contains no allegation that Performance failed to secure payment of LHWCA compensation.

B. *Louisiana Direct Action Statute*

Because the Jones Act and negligence claims against Performance have been dismissed, Brown no longer has any claims against that defendant before this Court. Performance's alleged insurer, Signal, has been sued by Brown pursuant to Louisiana's direct action statute. The pertinent provision of that statute provides as follows:

> The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only. . . .

La. Rev. Stat. § 22:1269(B)(1). Signal has filed its own motion for summary judgment arguing, inter alia, that because Brown has no claims against Performance, he cannot maintain any claims against Signal.

The Fifth Circuit, interpreting Louisiana law, has clearly stated that "the injured person's right against the insurer, which is derived by the direct action statute from the plaintiff's right against the insured tortfeasor, generally is dependent upon that substantive delictual right for its existence and scope." McAvey v. Lee, 260 F.3d 359, 369 (5th Cir. 2001). Brown does not rebut this argument in his opposition brief to Signal's motion. Moreover, Brown makes no allegation against Signal in either the original or amended petition that is independent of his allegations against Performance. Because all of Brown's claims against Performance have been dismissed, he no longer has any basis to sue Performance's alleged insurer, Signal, under the direct action statute. Therefore, Signal's motion for summary judgment is **GRANTED** and Brown's claims

12

against Signal are **DISMISSED WITH PREJUDICE**.

C.  *LHWCA Section 905(b)*

Brown's original petition asserted that he brought his claims "pursuant to the general maritime law for negligence."[26] In his amended petition, however, Brown amended his allegations to restate his claim against EBI as one brought pursuant to 33 U.S.C. § 905(b).[27] "Section 905(b) does not create a new admiralty remedy but merely codifies existing non-statutory general maritime negligence remedies against vessel owners." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 7-10, at 470 (4th ed. 2004). Therefore, Brown's sole remaining claim is his § 905(b) allegation against EBI pursuant to the LHWCA. Defendants contend that the Outer Continental Shelf Lands Act ("OCSLA") directs the application of Louisiana law to that claim. The Court turns now to that inquiry.

**IV.  Application of OCSLA**

"The Outer Continental Shelf Lands Act provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 495 (5th Cir. 2002) (footnote omitted). The Act "applies federal law to certain structures and devices on the [outer continental shelf], incorporates state law into federal law on the [outer continental shelf], and applies the LHWCA to certain injuries sustained by persons

---

[26] Pet. ¶2.

[27] Brown's LHWCA claim pursuant to § 905(b) was made in the event he was denied seaman status.

13

working on the [outer continental shelf]." Id. at 496. Defendants seek a ruling that, pursuant to OCSLA, Louisiana state law is adopted as federal law with respect to Brown's negligence claims.

"It is well settled that for Louisiana law to apply as surrogate federal law under OCSLA, the three conditions established by [the Fifth Circuit] in Union Texas Petroleum Corp. v. PLT Engineering, Inc. must be met." Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 543 F.3d 256, 258 (5th Cir. 2008) (citation omitted). The three PLT conditions are: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artifical structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." PLT Engineering, 895 F.2d 1043, 1047 (5th Cir. 1990).

Defendants contend that all three conditions have been met in this case. Brown, meanwhile, challenges defendants on the second condition, without conceding the first or third conditions.[28] The Court concludes that the first condition articulated in PLT has not been met and, therefore, that it need not consider the remaining two conditions.

A. *OCSLA Situs Requirement*

Section 1333(a)(1) of OCSLA creates a situs requirement for the application of other

---

[28] Brown states that, in the alternative, "the record in this matter is not sufficiently developed at this point in time to determine whether or not OCSLA applies. For example, there is no testimony regarding whether or not the vessel was indeed on the outer continental shelf when the injury occurred." Mem. opp'n 12.

14

provisions of the statute, including §§ 1333(a)(2) and 1333(b).²⁹ Demette, 280 F.3d at 496. The Fifth Circuit has established the following rule to determine whether those latter provisions of OCSLA apply:

> The OCSLA applies to all of the following locations:
> (1) the subsoil and seabed of the OCS;
> (2) any artificial island, installation, or other device if
>     (a) it is permanently or temporarily attached to the seabed of the OCS, and
>     (b) it has been erected on the seabed of the OCS, and
>     (c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;
> (3) any artificial island, installation, or other device if
>     (a) it is permanently or temporarily attached to the seabed of the OCS, and
>     (b) it is not a ship or vessel, and
>     (c) its presence on the OCS is to transport resources from the OCS.

Id. at 497. Defendants argue that the JIMMIE HOLMES fits squarely within the second location category set forth in Demette. They cite Demette, itself, wherein the court found that a jack-up drilling rig fell into that category: "[the jack-up drilling rig] was a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil." Defendants state that the JIMMIE HOLMES "was temporarily attached to the seabed of the OCS for the purpose of <u>assisting in construction conducted in furtherance of oil exploration</u>."³⁰ The underlined text demonstrates how the analogy to the drilling rig in Demette breaks down.

---

²⁹ Those latter provisions, in turn, incorporate state law into federal law, § 1333(a)(2), and extend the LHWCA to non-seamen (like Brown) employed on the outer continental shelf, § 1333(b). Demette, 280 F.3d at 497-98.

³⁰ Mem. supp. 11 (emphasis added).

15

Defendants ignore that no record evidence establishes that the JIMMIE HOLMES was, first, a "jack-up drilling rig," second, that it was erected on the seabed of the OCS, and, third, that its presence on the OCS was "for the purpose of drilling for oil." Id. Indeed, defendants concede that the JIMMIE HOLMES was instead a "lift/jack-up style workboat" and that it was chartered "to provide transportation of workers and equipment, as well as support services to the Performance crew."[31] On the present record, the Court cannot conclude that no genuine issue of material fact exists concerning the application of OCSLA to the JIMMIE HOLMES.

Because the first PLT condition, the situs requirement of OCSLA is not met for purposes of this motion, the Court need not consider the other two PLT conditions. Accordingly, defendants' motion for summary judgment is **DENIED** with respect to the application of Louisiana law to Brown's vessel negligence claim.

V.  **Conclusion**

Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment,[32] filed on behalf of Performance and EBI, is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted insofar as (1) Brown's Jones Act and maintenance and cure claims are **DISMISSED WITH PREJUDICE**; and (2) Brown's exclusive remedy against Performance as his employer is pursuant to the LHWCA. The motion is denied insofar as no declaration that Louisiana law applies to Brown's remaining claim against EBI is warranted.

---

[31] Id. at 2. The potentially material distinctions between a jack-up drilling rig and a "lift/jack-up style workboat" are not explored in detail by the parties in their briefs.

[32] R. Doc. No. 65.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Signal[33] is **GRANTED** and that all of Brown's claims against Signal are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, January 20, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[33] R. Doc. No. 56.